UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JOHN SOLOMON,

        Plaintiff,

    v.

DEPARTMENT OF HEALTH AND HUMAN
SERVICES,

        Defendant.

Civil Action No. 24-0572 (RBW)

**<u>DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO STAY</u>**

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................ 1

BACKGROUND ........................................................................................................ 5

LEGAL STANDARDS ............................................................................................... 6

I.      5 U.S.C. § 552(a)(6)(C)(i) ................................................................................. 6

II.     Inherent Authority to Stay Proceedings under *Landis* ...................................... 8

ARGUMENT ............................................................................................................. 9

I.      The Court Should Grant an Eighteen-Month Stay Under
        5 U.S.C. § 552(a)(6)(C)(i) Because FDA Can Demonstrate "Exceptional
        Circumstances" and "Due Diligence" ............................................................... 9

        A.      The Branch's *PHMPT II* Court-Ordered Production of at Least 180,000
                Pages Per Month until June 2025, and Other Increased Obligations
                Constitute "Exceptional Circumstances" ............................................ 10

        B.      FDA is Exercising "Due Diligence" ..................................................... 13

II.     The Court Should Exercise Its Inherent Authority to Issue the Stay Under *Landis* .......... 15

III.    Sensitivity of the Records ............................................................................... 17

CONCLUSION ........................................................................................................ 19

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Appleton v. FDA*,
254 F. Supp. 2d 6 (D.D.C. 2003) ................................................................................................. 8

*Belize Soc. Dev. Ltd. v. Gov't of Belize*,
668 F.3d 724 (D.C. Cir. 2012) ................................................................................................... 16

*Campaign for Accountability v. Dep't of Just.*,
280 F. Supp. 3d 112 (D.D.C. 2017) ............................................................................................ 9

*Clinton v. Jones*,
520 U.S. 681 (1997) ................................................................................................................... 16

*Ctr. for Biological Diversity v. Ross*,
419 F. Supp. 3d 16 (D.D.C. 2019) ............................................................................................ 16

*Democracy Forward Found. v. Dep't of Just.*,
354 F. Supp. 3d 55 (D.D.C. 2018) ............................................................................................. 8

*Elec. Frontier Found. v. Dep't of Just.*,
517 F. Supp. 2d 111 (D.D.C. 2007) ...................................................................................... 6, 12

*Elec. Frontier Found. v. Off. of Dir. of Nat'l Intel.*,
Civ. A. No. 08-1023, 2009 WL 773340 (N.D. Cal. Mar. 23, 2009) ........................................... 9

*Energy Future Coal. v. Off. of Mgmt. & Budget*,
200 F. Supp. 3d 154 (D.D.C. 2016) ................................................................................. 7, 8, 13

*Food Mktg. Inst. v. Argus Leader Media*,
588 U.S. 427 (2019) ............................................................................................................. 17, 18

*Huddleston v. FBI*,
Civ. A. No. 20-0447, 2021 WL 1837548 (E.D. Tex. May 7, 2021) ........................................... 9

*Hulley Enters. Ltd. v. Russian Fed'n*,
502 F. Supp. 3d 144 (D.D.C. 2020) .......................................................................................... 16

*Landis v. N. Am. Co.*,
299 U.S. 248 (1936) ................................................................................................................. 4, 8

*Nat'l Sec. Archive v. SEC*,
770 F. Supp. 2d 6 (D.D.C. 2011) ................................................................................................ 7

*Open Am. v. Watergate Special Prosecution Force*,
547 F.2d 605 (D.C. Cir. 1976) ................................................................................................. 4, 6

*Shapiro v. Dep't of Just.*,
Civ. A. No. 12-0313, 2014 WL 12912625 (D.D.C. Dec. 8, 2014) ................................................ 7

**STATUTES**

5 U.S.C. § 552 ...................................................................................................................... 4, 6, 7

## INTRODUCTION

Defendant United States Department of Health and Human Services (the "Department"), on behalf of its components, the Food and Drug Administration ("FDA") and Centers for Disease Control and Prevention ("CDC"), respectfully submits this memorandum in support of its motion to stay this Freedom of Information Act ("FOIA") action for an eighteen-month period.

This litigation involves two FOIA requests that Plaintiff submitted: one to FDA (FDA FOIA Control No. 2024-54) and another to CDC (CDC FOIA Control No. 24-00444-FOIA). Both requests appear to seek identically described records relating to COVID-19 vaccinations and the Vaccine Adverse Event Reporting System that would be in FDA's Center for Biologics Evaluation and Research (the "Center"). The Department seeks this stay with respect to FDA processing any records (i.e., review and redaction) regarding FDA FOIA Control No. 2024-54, including identically described records for CDC FOIA Control No. 24-00444-FOIA that were determined to be in FDA's jurisdiction. Plaintiff's request is pending in FDA's Center. If a stay is granted, Plaintiff's request will remain in the Center's FOIA queue to be processed when it reaches the front of the queue, even if the stay has yet to expire. After an eighteen-month stay, if Plaintiff's request has yet to be processed, the Department will be better situated to update the Court on FDA's ability to process Plaintiff's request.

The Center's Access Litigation and Freedom of Information Branch (the "Branch") is responsible, among other things, for processing Center-maintained records in response to FOIA requests, FOIA-related consultation requests from other federal agencies, and FOIA litigation. The Branch has been dealing with an unprecedented workload requiring FOIA productions involving approximately 5.7 million pages of COVID-19 vaccine records in a compressed timeframe. *See Pub. Health & Med. Pros. for Transparency v. FDA*, Civ. A. No. 21- 1058 (MTP) (N.D. Tex.) ("*PHMPT I*"); *Pub. Health & Med. Pros. for Transparency v. FDA*, Civ. A. No. 22-0915 (MTP)

(N.D. Tex.) ("*PHMPT II*"); Ex. 1 - Declaration of Suzann Burk ("Burk Decl."), ¶¶ 6, 21. Collectively, the production orders in these two cases have required the Center to process at least 90,000 to 110,000 pages per month from July 2023 through November 2023 and, starting in December 2023, at least 180,000 pages per month until June 2025.[1] Burk Decl. ¶¶ 22, 24. Although production in *PHMPT I* was completed in November 2023, the compliance effort necessitated the redirecting of resources contributing to the FOIA backlog and, to meet the court's deadline in *PHMPT II*, an average of at least 230,000 pages per month will need to be produced. *Id.* ¶¶ 6, 24-25. These unprecedented productions have been ordered alongside a backdrop of other increased workload obligations, including an increase in FOIA requests and FOIA litigation stemming, in large part, from requests related to the Center's work pertaining to the COVID-19 pandemic. *Id.* ¶¶ 19-20.

As a result of these exceptional circumstances, FDA or the Department has moved for eighteen-month stays in eight FOIA cases to date, seeking Center records maintained by the Center. Every court that has ruled on the stay motion has granted it in whole or in part. *See* Order, *Wright v. Dep't of Health & Hum. Servs.*, Civ. A. No. 22-1378 (RC) (D.D.C. Oct. 13, 2023), ECF No. 28 (granting unopposed motion for eighteen-month stay); Order, *Informed Consent Action Network v. FDA*, Civ. A. No. 23-0219 (RBW) (D.D.C. Nov. 21, 2023), ECF No. 27 (vacating all pending deadlines and setting conference in six months to discuss status); Order, *Informed Consent Action Network v. FDA*, Civ. A. No. 23-0219 (RBW) (D.D.C. May 24, 2024), ECF No. 29 (extending six month stay for another six months); Min. Order, *Children's Health Def. v. FDA*, Civ. A. No. 23-2316 (TJK) (D.D.C. Dec. 13, 2023) (minute order granting eighteen-month stay

---

[1]     A copy of the *PHMPT II* order, which provides a table summarizing the Branch's *PHMPT I* and *PHMPT II* minimum monthly productions, is Attachment A to the Burk declaration.

until further order of court, with status report in six months addressing need for further stay of proceedings); Mem. Opinion & Order, *Children's Health Def. v. FDA*, Civ. A. No. 23-0220 (RDM) (D.D.C. Jan. 12, 2024), ECF No. 25 (granting stay of six months, with joint status report in six months). In a fifth case, the plaintiff voluntarily dismissed its suit without prejudice after the stay motion was filed. *See* Jt. Stip. of Dismissal Without Prejudice, *Informed Consent Action Network v. FDA*, Civ. A. No. 23-1508 (CKK) (D.D.C. Oct. 2, 2023), ECF No. 15. A motion for stay is pending in three more cases. *See* Mot. to Stay, *Informed Consent Action Network v. FDA*, Civ. A. No. 23-3675 (JMC) (D.D.C. Feb. 20, 2024), ECF No. 13; Part. Mot. to Stay, *Children's Health Def. v. CDC*, Civ. A. No. 23-0431 (TNM) (D.D.C. Mar. 27, 2024), ECF No. 20; Mot. to Stay, *Informed Consent Action Network v. FDA*, Civ. A. No. 23-3282 (ABJ) (D.D.C. June 13, 2024), ECF No. 20.

FDA is exercising due diligence and has made and continues to make extraordinary efforts to hire, train, and maximize efficiencies to comply with the *PHMPT* court orders and its other FOIA obligations. Among other things, the Branch hired and trained contractors (approximately nine full-time and one part-time) to focus on processing records in *PHMPT I* (in which production has now been completed), at an estimated cost of approximately $3.5 million through October 2023. Burk Dec. ¶¶ 22-23. Because of *PHMPT II*, the Branch brought on board six new full-time employees in June–December 2023 who are currently being trained. *Id*. ¶ 25. The Branch also significantly increased its contractors and brought on board additional employees in 2024 to date. *Id*. ¶¶ 30-31. However, it takes approximately two years for new staff to be fully trained. *Id*. ¶ 27. The training process initially slows the pace of processing outstanding requests because more senior employees must review the new employees' work, line-by-line, to ensure that records are being correctly reviewed for necessary redactions. *Id*. Thus, despite the Branch's good-faith

investment in increasing its future processing capacity by training new employees, its resources remain limited during this lengthy onboarding period. *Id.*

In addition to the power to grant a stay under *Open America v. Watergate Special Prosecution Force*, 547 F.2d 605 (D.C. Cir. 1976), and 5 U.S.C. § 552(a)(6)(C), this Court also has inherent authority to grant a stay under *Landis v. North American Co.*, 299 U.S. 248 (1936). To issue a *Landis* stay, a court weighs the specific hardships to the parties and the interest in judicial economy. *See id.* at 255. Here, FDA can show specific and unprecedented hardships arising from *PHMPT I* and *PHMPT II*, and the requested stay sought will not harm Plaintiff, particularly given the abundance of COVID-19 vaccine-related information that FDA already has made publicly available.

Accordingly, this Court should grant an eighteen-month stay with respect to any FDA processing of records (i.e., review and redaction) for FOIA Control No. 2024-54 that Plaintiff submitted to FDA, including records for FOIA Control No. 24-00444-FOIA that Plaintiff submitted to CDC that were determined to be in FDA's jurisdiction. At the end of the stay, the Department, on behalf of FDA, will file a status report advising the Court of FDA's circumstances and whether it needs additional time before processing Plaintiff's request. As described above, the courts in this jurisdiction that have ruled on similar motions have entered stays ranging from six months to eighteen months. No court has denied a stay. An eighteen-month stay will help the Branch triage its limited resources to respond to the broad range of requests it continues to receive, while complying with an exceptionally burdensome court order in *PHMPT II*, and help to ensure that, when the Branch is able to turn to the records at issue here, it can conduct a careful review to determine releasability.

**BACKGROUND**

This action stems from two FOIA requests that Plaintiff submitted: one to FDA and another to CDC. *See* Compl. ¶¶ 18, 20, 23, 25, ECF No. 1. The first request (No. 2024-54), submitted to FDA on January 2, 2024, seeks the following records:

> [A]ll records of updates and corrections relating to COVID-19 Vaccinations—such as formal diagnoses, recovery, or death, that are collected after the initial reports to the Vaccine Adverse Event Reporting System (VAERS), but that are not published in the public VAERS database.
>
> The data we are specifically seeking was discussed publicly by the FDA official Narayan Nair, as quoted by the British Medical Journal in an article published in November 2023. She described the data as belonging in a 'back end' system accessible to CDC and FDA officials and not in the publicly available VAERS database.

FOIA Req. to FDA, ECF No. 1-1. The second request (No. 24-00444-FOIA), submitted to CDC on January 2, 2024, seeks the same records. *See* FOIA Req. to CDC, ECF No. 1-3. Plaintiff's FOIA request to CDC was determined to be in FDA's jurisdiction. *See* Letter from HHS, ECF No. 1-6.

Within the Center's FOIA office, the Branch placed No. 2024-54 in the Complex Track FOIA queue because the Consult is expected to require more processing time than requests in other queues, such as the Simple Track. Burk Decl. ¶ 32; *see id.* ¶ 11 (describing FOIA queues). For requests in the Complex Track, the additional processing time is needed, among other things, to conduct the requisite line-by-line review of the records to determine whether any of the information contained in them is exempt from disclosure under FOIA; redact exempt information in accordance with agency procedure; conduct a quality-control review of the redactions; and prepare the records for production. *Id.* ¶ 32. The Branch also determined that a stay in this case is necessary to allow the Branch to focus its resources to maximize its chances of satisfying the *PHMPT II* production order. *Id.* ¶¶ 32-33; *cf. id.* ¶ 28 (noting that "cases involving complex requests in which substantial processing [by FDA] had not begun were more appropriate stay

candidates"). A stay will also help ensure that, before processing No. 2024-54, the Branch can process the FOIA requests pending ahead of it, *id.* ¶ 7, which is behind 492 earlier-submitted FOIA requests in the Complex Track as of June 18, 2024, *id.* ¶ 32.

## LEGAL STANDARDS

To obtain a stay in a FOIA case, the government may satisfy the requirements of either 5 U.S.C. § 552(a)(6)(C)(i) or *Landis*.

## I.  **5 U.S.C. § 552(a)(6)(C)(i)**

Generally, an agency that has received a FOIA request is expected to "determine within 20 days (excepting Saturdays, Sundays, and legal public holidays) after the receipt of any such request whether to comply with such request." 5 U.S.C § 552(a)(6)(A)(i). However, under Section 552(a)(6)(C)(i), "[i]f the Government can show exceptional circumstances exist and that the agency is exercising due diligence in responding to the request, the court may retain jurisdiction and allow the agency additional time to complete its review of the records." *Id.* § 552(a)(6)(C)(i).

Section 552(a)(6)(C) was given its definitive interpretation in *Open America.* There, the D.C. Circuit explained that "exceptional circumstances" existed to justify a stay within the meaning of Section 552(a)(6)(C)(i) when "an agency . . . is deluged with a volume of [FOIA] requests for information vastly in excess of that anticipated by Congress" and "when the existing resources are inadequate to deal with the volume of such requests within the time limits" provided by FOIA. *Open Am.*, 547 F.2d at 616. The Court also found that the agency was exercising "due diligence" because it had a large staff, separated between complex and simple cases, and handled cases on a first-in, first-out system. *Id.* at 613. Congress subsequently amended FOIA to endorse the logic of *Open America. See Elec. Frontier Found. v. Dep't of Just.*, 517 F. Supp. 2d 111, 116-17 (D.D.C. 2007) (explaining FOIA's 1996 amendments).

Exceptional circumstances exist when there is, for example, a substantial, unpredictable increase in the number of FOIA requests that an agency receives. *See id.* at 119 (finding "exceptional circumstances" when there was a one-third increase in FOIA requests and inadequate numbers of staff available to handle the increased volume); *Shapiro v. Dep't of Just.*, Civ. A. No. 12-0313, 2014 WL 12912625, at *2 (D.D.C. Dec. 8, 2014) (finding "exceptional circumstances" where a repeat plaintiff filed eighty-one FOIA requests with the agency totaling 375,000 pages and comprising six to seven percent of the agency's monthly intake, and the agency "could not have reasonably planned for a single citizen to consume such a vast quantity of the agency's FOIA resources").

Exceptional circumstances also can be shown by an increase in FOIA litigation. For example, exceptional circumstances exist where "resources—and most notably, FOIA staff members—ha[d] been diverted to assist with multiple FOIA lawsuits, at least five of which are particularly resource-intensive and involve tens of thousands of documents." *Nat'l Sec. Archive v. SEC*, 770 F. Supp. 2d 6, 9 (D.D.C. 2011). A combination of increased FOIA requests and litigation can also demonstrate "exceptional circumstances." *Energy Future Coal. v. Off. of Mgmt. & Budget*, 200 F. Supp. 3d 154, 162 (D.D.C. 2016) (finding "exceptional circumstances" and granting six-month stay of FOIA proceedings where an agency had sixty-eight pending FOIA requests, twenty-seven of which predated plaintiffs' request, and was in litigation in two other FOIA cases).

When an agency demonstrates exceptional circumstances that rise above a predictable workload of requests, it needs to show due diligence to receive a stay but does not need to show that it is reducing the backlog of pending requests. *See* 5 U.S.C. § 552(a)(6)(C)(ii) (adding limits to "exceptional circumstances" that apply only when a delay results from a "predictable agency workload of requests," in which case an agency must show "reasonable progress in reducing its

backlog of pending requests"); *Democracy Forward Found. v. Dep't of Just.*, 354 F. Supp. 3d 55, 60 (D.D.C. 2018) ("Because the court finds that exceptional circumstances exist based on the dramatic increase in FOIA requests and the agency's exercise of due diligence in responding to those requests, the court need not reach the question whether Defendant is making reasonable progress in reducing its backlog.").

An agency acts with due diligence when it processes requests on a first-in, first-out basis, *see, e.g.*, *Appleton v. FDA*, 254 F. Supp. 2d 6, 10 (D.D.C. 2003) (concluding that "the defendants have demonstrated good-faith efforts and due diligence in processing the plaintiff's request on a first-in, first-out basis"), or processes them in a "multi-track" system of "simple" requests, which are expedited, and "complex" requests, which take longer to process, *see Energy Future Coal.*, 200 F. Supp. 3d at 162 (finding that "[the agency] has exercised due diligence by processing Plaintiffs' FOIA request within [the agency's] 'multi-track' processing system," under which "[the agency] resolves 'simple' and 'expedited' requests in an expedited fashion, while [the agency] concurrently responds to 'complex requests' by making rolling productions"). An agency may also show due diligence by reorganizing its resources to better respond to increased FOIA requests, or by pursuing additional funding or employees, although the latter steps are not required. *Democracy Forward Found.*, 354 F. Supp. 3d at 62 (finding "due diligence" based on agency's efforts to reorganize staff and create complex and expedited queues in response to increased FOIA requests, even where agency did not seek additional funding for FOIA processing or increase the number of employees).

## II.   Inherent Authority to Stay Proceedings under *Landis*

An alternative ground for issuance of a stay is a court's exercise of its inherent authority to control its docket. *Landis*, 299 U.S. at 254. "The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy

of time and effort for itself, for counsel, and for litigants." *Id.* To issue a *Landis* stay, a court balances competing interests, weighing the specific hardships to the parties and the interest in judicial economy. *See id.* at 255.

Courts have specifically applied *Landis* to grant stays in FOIA cases. *See, e.g.*, *Campaign for Accountability v. Dep't of Just.*, 280 F. Supp. 3d 112, 114-17 (D.D.C. 2017) (citing *Landis* and granting stay to allow Office of Legal Counsel to evaluate the agency's position regarding refined claims in an amended complaint); *Huddleston v. FBI*, Civ. A. No. 20-0447, 2021 WL 1837548, at *2 (E.D. Tex. May 7, 2021) (citing *Landis* to grant stay followed by production at "a standardized rate of 500 pages per month" due to "strained resources of their departments and significant volumes of other FOIA requests"); *see also Elec. Frontier Found. v. Off. of Dir. of Nat'l Intel.*, Civ. A. No. 08-1023, 2009 WL 773340, at *2-4 (N.D. Cal. Mar. 23, 2009) (granting *Landis* stay to plaintiff who requested time to review newly issued FOIA guidelines, defendant would not be prejudiced, and stay would further orderly course of justice).

## ARGUMENT

### I.    The Court Should Grant an Eighteen-Month Stay Under 5 U.S.C. § 552(a)(6)(C)(i) Because FDA Can Demonstrate "Exceptional Circumstances" and "Due Diligence"

This Court should grant the requested partial stay under Section 552(a)(6)(C)(i) because FDA can show: (i) "exceptional circumstances" based on the unprecedented court orders requiring voluminous productions in *PHMPT I* and *PHMPT II* and substantial increases in FOIA requests and litigation involving the Branch; and (ii) "due diligence" based on the extraordinary efforts the Branch took to comply with the *PHMPT I* order and has been taking to comply with the *PHMPT II* order, including hiring and training new staff and contractors, reorganizing and triaging staff resources, and continuing to seek additional funding. As noted above, every court that has ruled

on a motion for stay in a FOIA suit seeking Center records on similar grounds has granted the motion in whole or in part.

### A.   The Branch's *PHMPT II* Court-Ordered Production of at Least 180,000 Pages Per Month until June 2025, and Other Increased Obligations Constitute "Exceptional Circumstances"

The Branch has been facing "exceptional circumstances." The concurrent court-ordered productions in *PHMPT I* and *PHMPT II* have involved approximately 5.7 million pages of COVID-19 vaccine-related records and collectively have required the Branch to produce records at rates totaling 90,000 to 180,000 pages per month beginning in July 2023. At the same time, the Branch has faced an increase in FOIA requests and lawsuits. *See* Burk Decl. ¶¶ 6, 18-20. These increases have further strained the agency's limited resources and ability to perform the requisite, careful, line-by-line review of all records before production that is necessary to protect confidential commercial and personal privacy information as required by law. *See generally id.* ¶¶ 8-10 (describing FDA's obligation to protect information); ¶ 13 (noting line-by-line review process); ¶ 27 (describing new-employee training process).

Before the 2022 production order in *PHMPT I*, the Branch was able to keep its FOIA queues relatively low and stable with nine regular staff and one branch chief. Burk Decl. ¶ 18. From fiscal years 2015 to 2018, the number of FOIA requests received by the Center each year ranged from 255 to 343, and the number of FOIA requests pending at the end of each year ranged from 39 to 54. *Id*. The number and complexity of FOIA requests began to increase in FY 2019. *Id.* ¶ 19. By FY 2021, the Center began to receive more than 500 requests annually, with 509 requests in FY 2021 and 633 requests in FY 2022. *Id*. By the end of FY 2022, the number of pending FOIA requests grew to 532. *Id*. By the end of FY 2023, although the number of FOIA requests received declined to 487, the number of requests closed also declined to 336, while the number of pending requests increased to 679. *Id.* Moreover, starting in FY 2020, FOIA suits added

significantly to the Branch's workload. *Id.* Before FY 2020, few suits involving the Branch were filed; today, it is involved in eighteen cases, including this one.[2] *Id.* ¶¶ 18-20. The Burk declaration provides two tables summarizing these trends. *Id.* ¶¶ 18-19; *see* ¶ 20. The data collected as of the end of FY 2023 show that the number of pending FOIA requests has continued to grow under the strain of increased FOIA litigation and increased requests. *Id.* ¶ 19. As of May 13, 2024, the number has increased to 765. *Id.* ¶ 20.

In *PHMPT I*, the United States District Court for the Northern District of Texas ordered FDA to produce records beginning in March 2022 at an unprecedented average rate of 55,000 pages per month. *Id.* ¶ 22. The *PHMPT I* record comprised over 1.2 million pages related to Pfizer-

---

[2]     In addition to *PHMPT I, PHMPT II*, and the present case, the Branch is involved in the following thirteen FOIA cases that remain pending: *Wright v. Dep't of Health & Hum. Servs.*, Civ. A. No. 22-1378 (RC) (D.D.C.), filed May 18, 2022; *Defending the Republic v. FDA*, Civ. A. No. 22-1237 (N.D. Tex.), filed June 7, 2022; *de Garay v. FDA*, Civ. A. No. 22-0512 (S.D. Ohio), filed September 3, 2022; *Informed Consent Action Network v. FDA*, Civ. A. No. 22-3572 (CKK) (D.D.C.), filed November 23, 2022; *Informed Consent Action Network v. FDA*, Civ. A. No. 23-0219 (RBW) (D.D.C.), filed January 25, 2023; *Children's Health Def. v. FDA*, Civ. A. No. 23-0220 (RDM) (D.D.C.), filed January 26, 2023; *Protect the Public's Trust v. FDA*, Civ. A. No. 23-2322 (DLF) (D.D.C.), filed August 10, 2023; *Children's Health Def. v. FDA*, Civ. A. No. 23-2316 (TJK) (D.D.C.), filed August 10, 2023; *Informed Consent Action Network v. FDA*, Civ. A. No. 23-1088 (W.D. Tex.), filed September 11, 2023; *Jud. Watch v. Dep't of Health & Hum. Servs*, Civ. A. No. 23-3225 (APM) (D.D.C.), filed October 27, 2023; *Informed Consent Action Network v. FDA*, Civ. A. No. 23-3282 (ABJ) (D.D.C.), filed November 2, 2023; *Informed Consent Action Network v. FDA*, Civ. A. No. 23-3675 (JMC) (D.D.C.), filed February 20, 2024.

A fourteenth case, *Informed Consent Action Network v. FDA*, Civ. A. No. 23-0112 (CRC) (D.D.C.), filed January 13, 2023, was dismissed on August 10, 2023, after completion of the document search returned no responsive records. A fifteenth case, *Informed Consent Action Network v. FDA*, Civ. A. No. 23-0451 (JEB) (D.D.C.), filed February 17, 2023, was voluntarily dismissed on October 31, 2023, after a narrowed document search returned no responsive records. And a sixteenth case, *Informed Consent Action Network v. FDA*, Civ. A. No. 23-1508 (CKK) (D.D.C.), filed May 25, 2023, was voluntarily dismissed without prejudice on October 2, 2023.

To date, FDA (or the Department) has moved for eighteen-month stays in eight of these FOIA cases. *See supra* at 2-3; *see also* Burk Decl. ¶ 28 (explaining the Branch's criteria in determining whether to move for a stay).

BioNTech's Comirnaty vaccine for COVID-19 approved for individuals sixteen years of age and older. *Id*. Although production of *PHMPT I* records was completed on November 1, 2023, the effort to comply with the production order necessitated the redirection of resources, thereby contributing to the Branch's backlog of outstanding FOIA requests. *Id.* ¶ 24.A. Given that the production rate ordered in *PHMPT I* far exceeded FOIA production rates typically ordered by courts, the Center's Division of Disclosure and Oversight Management, and the Branch, which it oversees, implemented immediate and sweeping organizational and work process changes including, among other things, hiring contractors and additional full-time employees at a substantial expense, reorganizing staff, and diverting resources from processing other FOIA matters. *Id*. ¶ 23. While the Branch's extraordinary efforts to marshal resources to comply with the *PHMPT I* order were ongoing, FDA was sued in *PHMPT II*. *Id*. ¶ 24. In *PHMPT II*, the records at issue are estimated to be over 4.5 million pages relating both to FDA's approval of Pfizer's Comirnaty vaccine for twelve to fifteen-year-olds and Moderna's Spikevax vaccine. *Id*.

The same court imposed an even more intense monthly production schedule on the Center. *Id.* From July 2023 to November 2023, the Branch was required to produce 90,000 to 110,000 pages per month in *PHMPT I* and *PHMPT II* collectively. *Id.* Then, beginning in December 2023, after the *PHMPT I* production had concluded, the Branch has been required to produce 180,000 pages per month in *PHMPT II*. *Id*. And production of all responsive records must be completed by June 30, 2025. *Id*. To FDA's knowledge, this production rate is many orders of magnitude greater than anything any agency has ever encountered in a FOIA production order. *Id.* These unprecedented production orders, along with the backdrop of substantially increased FOIA litigation and requests, far exceed a "predictable" agency workload and thus constitute the "exceptional circumstances" that justify a stay. *See Elec. Frontier Found.*, 517 F. Supp. 2d at 119

(finding "exceptional circumstances" because the agency established more than a "predictable" or "routine" backlog based on a one-third increase in FOIA requests and inadequate numbers of staff available to handle the increased volume). Indeed, three courts to date in this district have so held. *See* Min. Order, *Children's Health Def. v. FDA*, Civ. A. No. 23-2316 (TJK) (D.D.C. Dec. 13, 2023) ("agency has shown both exceptional circumstances and due diligence"); Order, *Informed Consent Action Network v. FDA*, Civ. A. No. 23-0219 (RBW) (D.D.C. Nov. 21, 2023), ECF No. 27; Mem. Opinion & Order, *Children's Health Def. v. FDA*, Civ. A. No. 23-0220 (RDM) (D.D.C. Jan. 12, 2024), ECF No. 25. An eighteen-month stay in a fourth case was unopposed. *See* Order, *Wright v. Dep't of Health & Hum. Servs.*, Civ. A. No. 22-1378 (RC) (D.D.C. Oct. 13, 2023), ECF No. 28.

### B. FDA is Exercising "Due Diligence"

As described in the Burk declaration, the Branch has a multi-track process for handling FOIA requests, where requests are placed in one or more of six queues based on volume, complexity, and subject matter, and requests in each queue are generally assigned to reviewers for processing on a first-in, first-out basis. *Id.* ¶ 11. This alone is sufficient to show "due diligence." *Energy Future Coal.*, 200 F. Supp. 3d at 162 (finding "due diligence" based on a "multi-track" processing system separating "simple" and "complex" requests). But as detailed below, FDA can demonstrate extraordinary efforts to comply with its production orders while continuing to process FOIA requests that far exceed what is necessary to show "due diligence."

To comply with the *PHMPT I* and *PHMPT II* orders and fulfill its other responsibilities stemming from increased FOIA requests and litigation, the Center's FOIA office has undertaken immediate and aggressive efforts to hire additional staff and contractors, seek funding, and reorganize its resources. Burk Decl. ¶¶ 23, 25-26, 30-31. As noted above, before *PHMPT I*, the Branch consisted of nine regular staff supervised by one branch chief. *Id.* ¶ 18. After the *PHMPT I*

order, the Branch made large-scale changes to its staff and work processes. Among other things, the Branch hired contractors (nine full-time and one part-time) to focus on processing records for the *PHMPT I* litigation. *Id*. ¶ 23. The estimated cost of contractors alone for processing records in *PHMPT I* totaled approximately $3.5 million through October 2023. *Id*. The Branch was also able to assign nine full-time employees to focus primarily on the *PHMPT I* production, leaving a smaller team of six full-time employees to assume primary responsibility for all other FOIA requests. *Id*.

With the *PHMPT I* production concluded, the Branch was required to ramp up to 180,000 pages per month in December 2023, although it will need to produce at least 230,000 pages per month to meet the court's deadline. *Id.* ¶ 24. Since the *PHMPT II* order issued, the Branch once again reorganized staffing and left only a handful of staff working on all other FOIA requests. *Id*. ¶ 25. It also increased the number of employees and contractors. *Id.* ¶¶ 25, 30. The Branch brought on board six new employees from June to December 2023 and three new employees in early 2024, all of whom are currently being trained, and at least another two new employees are expected to be onboard in the next few months. *Id*. Further, the Branch now has 26 contractors focusing on the *PHMPT II* productions. *Id*. ¶ 31. Additionally, the Center's Division of Disclosure and Oversight Management has been reassigning staff as available to assist in the review of the Branch-managed records. *Id.* ¶ 25.

The Branch continues to work diligently to hire additional staff and contractors who will be critical to ensuring that FDA can comply with the existing *PHMPT II* production order going forward—efforts that will require the Branch to seek substantial monetary resources during a time of budgetary uncertainty. *Id.* ¶ 26. Determining the number of employees and contractors needed

for these enormous productions while factoring in the availability of necessary financial resources requires on-going, complex discussions with entities within and outside the Center. *Id*.

Importantly, while the Center's ongoing hiring and training efforts demonstrate the agency's "due diligence" and good-faith investment to comply with its court-ordered production mandates and address the existing backlog of FOIA requests, its efforts are limited by the lengthy ramp-up period for hiring and training new employees. *Id.* ¶ 27. Thus, even if the Center is awarded the resources it hopes to add to the Branch, receiving funds and hiring are merely the first steps in a labor-intensive process needed to onboard employees so that they can contribute to the Branch's disclosure efforts. *Id.* The process of advertising, recruiting, interviewing, and conducting administrative onboarding alone takes several months (assuming a qualified candidate is found). *Id*. While new employees are in training, current staff must spend time partnering with them to provide training and oversight. *Id*. Staff must review new employees' work to ensure that personal privacy, trade secrets, and other protected information is not inadvertently disclosed. *Id*. All told, after a new employee is onboarded, it takes approximately two years for an employee to be fully trained so that he or she can meaningfully contribute to the Branch's disclosure efforts. *Id*.

The Center is also in the process of restructuring its FOIA office—as part of this process, it created two new leadership positions and selected candidates who came on board January 28, 2024. *Id.* ¶ 31. Thus, the extraordinary efforts the Branch has undertaken in significantly expanding its numbers of staff and contractors, training new employees, and reorganizing staff resources, all while complying with unprecedented production orders and managing multi-track queues of FOIA requests, more than demonstrate the "due diligence" needed for a stay.

## II.   <u>The Court Should Exercise Its Inherent Authority to Issue the Stay Under *Landis*</u>

This Court may also exercise its inherent, equitable authority to grant a stay under *Landis*. "A federal district court 'has broad discretion to stay proceedings as an incident to its power to

control its own docket.'" *Ctr. for Biological Diversity v. Ross*, 419 F. Supp. 3d 16, 20 (D.D.C. 2019) (quoting *Clinton v. Jones*, 520 U.S. 681, 706 (1997)). A stay is appropriate when the movant's need "overrides the injury to the party being stayed." *Belize Soc. Dev. Ltd. v. Gov't of Belize*, 668 F.3d 724, 732 (D.C. Cir. 2012) (internal quotation marks omitted). Thus, courts consider: (1) the injury to the movant if the litigation proceeds without a stay, (2) the injury to the non-movant in granting a stay, and (3) the court's interest in judicial economy. *See Hulley Enters. Ltd. v. Russian Fed'n*, 502 F. Supp. 3d 144, 152 (D.D.C. 2020). All three factors militate in favor of granting a stay here.

First, HHS's component agency, FDA, will suffer serious hardship if this case is allowed to go forward at this time. As described in the preceding sections and the Burk declaration, the Branch already is triaging its limited resources and working at full capacity to address the extraordinary workload brought on by *PHMPT I* and *PHMPT II* and other essential obligations. Without any relief in the next eighteen months, the Branch may not be able to conduct the necessary line-by-line review of all records and may be at risk of violating the *PHMPT II* order, which would subject the agency to the threat of sanctions.

Second, Plaintiff will not be injured by the requested eighteen-month stay, as it has not articulated a specific need, or specific urgency, for the requested records. Moreover, the amount of information already available with respect to COVID-19 vaccines (including the hundreds of thousands of Comirnaty vaccine records already produced in *PHMPT I*) mitigates any potential "injury" Plaintiff might suffer. Indeed, to inform the public about its work related to the COVID-19 vaccines, FDA has published on its website the most important safety and efficacy information about Moderna's Spikevax vaccine, Pfizer-BioNTech's Comirnaty vaccine, and the supplemental approval of the Comirnaty vaccine for use in individuals ages twelve to fifteen years old. Among

other things, a Moderna-specific webpage provides focused information about the Spikevax vaccine and Moderna's bivalent booster vaccine. *See* FDA, Moderna's COVID-19 Vaccines, https://www.fda.gov/vaccines-blood-biologics/spikevax (last updated Sept. 21, 2023). Similarly, a Pfizer-specific webpage provides updated information about the Comirnaty vaccine and its bivalent booster vaccine. *See* FDA, Comirnaty, https://www.fda.gov/vaccines-blood-biologics/comirnaty (last updated Dec. 7, 2023).

Third, a stay will promote judicial economy by simplifying issues before this Court. Currently, because of the Branch's other commitments, the Branch is not able to agree to a processing schedule. As described in other motions for stay in FOIA cases involving FDA, the Branch is unable to agree to a processing schedule at this time because of the demands of the *PHMPT II* production order and the hundreds of FOIA requests waiting in line in the Branch's Complex Track longer than Plaintiff's request. After an eighteen-month stay, the Branch will be better situated to update the Court on its ability to process any responsive records in this case.

In sum, all three *Landis* factors weigh in favor of an eighteen-month stay of this case.

## III. <u>Sensitivity of the Records</u>

Lastly, FDA cannot take shortcuts or simply release records to relieve a backlog or complete processing of a particularly burdensome request. To the contrary, as the Supreme Court emphasized, FOIA exemptions serve "important interests" and are "as much a part of FOIA's purposes and policies as the statute's disclosure requirement." *Food Mktg. Inst. v. Argus Leader Media*, 588 U.S. 427, 439 (2019).

Here, due to exceptional circumstances, FDA has not identified custodians or search terms, commenced a search, or reviewed any records potentially responsive to Plaintiff's FOIA request. Plaintiff's FOIA request appears to seek, among other things, records related to adverse events of special interest following COVID-19 vaccination. FDA must take the time and have the resources

necessary to carefully process potentially responsive records and determine whether any FOIA exemptions apply. For example, FDA may need to determine whether information in the potentially responsive records is pre-decisional and deliberative. FDA may also need to review to protect privacy interests discussed in the records. Furthermore, FDA may need to protect proprietary information under Exemption 4 that provides "private parties with sufficient assurances about the treatment of their proprietary information so they will cooperate in federal programs and supply the government with information vital to its work." *Argus Leader*, 588 U.S. at 440. FDA—and the Court, now that Plaintiff's FOIA request has been brought before it—have responsibilities to, for example, patients and proprietary-information holders. A group of FOIA requestors, through the collective burden of their voluminous requests that could overwhelm an agency's FOIA processing capabilities, should not be able to subvert the FOIA exemptions' "important interests." *Id.*

*        *        *

**CONCLUSION**

For these reasons, the Department respectfully requests that this Court grant an eighteen-month stay in this case.

Date:  June 18, 2024
       Washington, DC

Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar # 481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

By:      _/s/ Sam Escher_
         SAM ESCHER, D.C. Bar # 1655538
         Assistant United States Attorney
         601 D Street, NW
         Washington, DC 20530
         (202) 252-2531
         Sam.Escher@usdoj.gov

OF COUNSEL:

*Attorneys for the United States of America*

SAMUEL R. BAGENSTOS
General Counsel
U.S. Dep't of Health and Human Services

MARK J. RAZA
Chief Counsel

WENDY S. VICENTE
Deputy Chief Counsel, Litigation

JOSHUA A. DAVENPORT
Associate Chief Counsel
Office of the Chief Counsel
U.S. Food and Drug Administration